**UTAH POWER & LIGHT COMPANY,**
**Substituted for Emery Mining**
**Corporation, Petitioner,**

v.

**SECRETARY OF LABOR, Federal**
**Mine & Safety Review**
**Commission, Respondents,**

**United Mine Workers of**
**America, Intervenor.**

**American Mining Congress,**
**Amicus Curiae.**

**Nos. 88–1655, 88–1659.**

United States Court of Appeals,
Tenth Circuit.

Feb. 26, 1990.

---

John A. Macleod, Thomas C. Means, and Ellen B. Moran, Crowell & Moring, Washington, D.C., for petitioner.

George R. Salem, Solicitor of Labor, Edward P. Clair, Associate Sol., Dennis D. Clark, Counsel, Appellate Litigation, and Barry F. Wisor, Atty., U.S. Dept. of Labor, Arlington, Va., for respondent.

Michael H. Holland, and Mary Lu Jordan, Washington, D.C., for intervenor.

---

Charles W. Newcom, and Susan K. Grebeldinger, Sherman & Howard, Denver, Colorado, Edward M. Green, and Mark G. Ellis, American Mining Congress, Washington, D.C., filed an amicus curiae Brief for American Min. Congress.

Before TACHA, BALDOCK, and BRORBY, Circuit Judges.

PER CURIAM.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

These cases present two issues of first impression in this circuit:

1. Whether walkaround rights established in § 103(f) of the Federal Mine Health and Safety Act of 1977 (Act), 30 U.S.C. § 813(f), extend to miners' representatives who are not employees of the mine operator?

2. Whether a miners' representative seeking to exercise walkaround rights under § 103(f) of the Act must first comply with the requirements of 30 C.F.R., Part 40?

The Federal Mine Safety and Health Review Commission (Commission) answered the first question in the affirmative and the second in the negative. We affirm on the first issue and reverse on the second.

On the morning of April 15, 1986, Vern Boston, a Mine Safety and Health Administration (MSHA) inspector, arrived at the Deer Creek Mine, an underground coal mine in Utah, to conduct an inspection. Deer Creek Mine was owned by Utah Power & Light Co. (UPL) and operated by Emery Mining Corporation (Emery). Inspector Boston was met at the gates of the mine by Tom Rabbitt, a member of the International Health and Safety Department of the United Mine Workers of America (UMWA), who introduced himself to the inspector and asked to accompany him on the inspection.

Boston agreed that Rabbitt could accompany him on the inspection, and he and Rabbitt entered the premises to get clearance for Rabbitt. The mine manager, Earl White, met with Rabbitt and told him he could enter the mine pursuant to the collective bargaining agreement with the UMWA but for the fact that he had not given the twenty-four hour advance notice required by Emery. Rabbitt then said he was seeking entrance under § 103(f) of the Act, which provides for walkaround rights.[1]

White, Rabbitt, and Boston discussed the scope of walkaround rights under § 103(f). White was of the opinion that since Rabbitt was not an Emery employee, he had no walkaround rights under the Act. Boston disagreed, saying that Rabbitt had walkaround rights because he was a member of the UMWA International. Boston then wrote White a citation under § 104(a) of the Act, 30 U.S.C. § 814(a), for violating

1. Section 103(f) of the Act provides:

**Participation of representatives of operators and miners in inspections**

Subject to regulations issued by the Secretary, a representative of the operator and a representative authorized by his miners shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any coal or other mine made pursuant to the provisions of subsection (a) of this section, for the purpose of aiding such inspection and to participate in pre- or post-inspection conferences held at the mine. Where there is no authorized miner representative, the Secretary or his authorized representative shall consult with a reasonable number of miners concerning matters of health and safety in such mine.

Such representative of miners who is also an employee of the operator shall suffer no loss of pay during the period of his participation in the inspection made under this subsection. To the extent that the Secretary or authorized representative of the Secretary determines that more than one representative from each party would further aid the inspection, he can permit each party to have an equal number of such additional representatives. However, only one such representative of miners who is an employee of the operator shall be entitled to suffer no loss of pay during the period of such participation under the provisions of this subsection. Compliance with this subsection shall not be a jurisdictional prerequisite to the enforcement of any provision of this chapter.

§ 103(f). He gave White ten minutes to abate the violation.

White, fearing that Boston might issue a withdrawal order if White did not abate the violation, agreed to let Rabbitt participate in the inspection, but said he must first sign a hazard recognition and waiver of liability form that Emery required nonemployees to sign before entering the mine. Rabbitt refused to sign the form. Boston then called his supervisor, who was not familiar with Emery's waiver form. Based on his belief that a representative of the UMWA International had an unlimited right of access to a mine under § 103(f), the supervisor instructed Boston to proceed with Rabbitt on the inspection. Boston then informed White that his refusal to permit Rabbitt to participate in the inspection unless Rabbitt signed a waiver of liability was in violation of § 103(f). Boston added a second violation of § 103(f) to the original citation.

Thereafter, White agreed to abate the alleged violation by allowing Rabbitt to accompany the inspector without signing the waive· of liability. The inspection party, consisting of Boston, Rabbitt, Mark Larsen, a representative of miners from the safety committee, and Terry Jordan and Dixon Peacock, representatives of Emery, then proceeded underground.

On April 17, 1986, pursuant to § 105(d) of the Act, 30 U.S.C. § 815(d), Emery filed a notice of contest of the citation issued April 15, 1986. Shortly thereafter, the UMWA moved to intervene in the proceedings. On April 24, 1986, Emery's contract with UPL was terminated and UPL took over the operation of its mines, including the Deer Creek Mine. UPL subsequently received three more citations from the MSHA for violations of § 103(f) similar to Emery's. UPL filed a timely notice of contest with respect to each citation. The parties agreed to try the citation issued to Emery and to have the administrative law judge's (ALJ) ruling on that citation control the disposition of the three citations issued to UPL.

The ALJ held an evidentiary hearing on May 14 and 15, 1986. The issues before him were the two under consideration in this appeal, as well as a third, concerning whether an operator can require a nonemployee representative of miners to sign a waiver of liability before exercising walkaround rights. On August 7, 1986, the ALJ ruled against Emery on all three issues. *Emery Mining Corp.,* 8 F.M.S.H.R.C. 1192 (1986).

Thereafter, the Commission granted discretionary review of the ALJ's decision pursuant to 30 U.S.C. § 823(d)(2)(A)(i). After briefing and oral arguments, the Commission issued its decision on Emery's citation on March 29, 1988. *Emery Mining Corp.,* 10 F.M.S.H.R.C. 276 (1988). The Commission also issued a consolidated summary opinion on UPL's three citations the same day. *Utah Power & Light Co.,* 10 F.M.S.H.R.C. 302 (1988). The Commission affirmed the ALJ on the first two issues and reversed him on the third issue concerning the waiver of liability.

Emery and UPL petitioned this court for review of the Commission's decisions pursuant to § 106(a) of the Act, 30 U.S.C. § 816(a). They challenge the Commission's rulings with respect to nonemployee walkaround rights and compliance with the requirements of 30 C.F.R., Part 40. We consolidated the petitions under the caption *Utah Power & Light Co. v. Secretary of Labor.* Since UPL has been substituted for Emery on appeal, we will refer to the arguments of UPL hereinafter.

## I.

We first address UPL's contention that § 103(f) walkaround rights do not extend to nonemployee representatives of miners. In reviewing the interpretation of § 103(f) asserted by the Secretary of Labor (Secretary) and the Commission, we are mindful of the United States Supreme Court's directions in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether

Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted).

We have held that an agency's interpretation of a statute entrusted to that agency for administration should be accepted if it is a reasonable one, even if another interpretation may exist that is equally reasonable. *Jones v. Federal Deposit Ins. Corp.*, 748 F.2d 1400, 1405 (10th Cir.1984); *Brennan v. Occupational Safety and Health Comm'n*, 513 F.2d 553, 554 (10th Cir.1975).

Congress did not speak to the precise issue before us when it drafted § 103(f) of the Act. Nonetheless, we, like the Commission, find the language of § 103(f) dispositive. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."); *Colorado Property Acquisitions, Inc. v. United States*, 894 F.2d 1173, 1174 (10th Cir.1990) ("When the meaning of a statute is clear from its face, resort to rules of statutory construction or legislative intent is unnecessary.").

The first sentence of § 103(f) provides that "a representative authorized by [the operator's] miners shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any coal or other mine made pursuant to the provisions of subsection (a) of this section." This sentence confers upon the miners the right to authorize a representative for walkaround purposes without any limitation on the employment status of the representative. *See Council of S. Mountains, Inc. v. Federal Mine Safety and Health Review Comm'n*, 751 F.2d 1418, 1421 n. 18 (D.C.Cir.1985) ("The Mine Act, however, merely refers to 'representatives' and does not articulate any distinction between the rights of employee and nonemployee representatives.").

The third sentence of § 103(f) provides that "[s]uch representative of miners *who is also an employee of the operator* shall suffer no loss of pay during the period of his participation in the inspection made under this subsection." (Emphasis added.) As noted by the Commission, "also" means "in addition," "as well," "besides," and "too." *Emery Mining Corp.*, 10 F.M.S.H.R.C. at 284 (quoting *Webster's Third Int'l Dictionary* 62 (Unabridged ed. 1971)). Put in other words, the third sentence of § 103(f) reads: "A representative of miners who, in addition to being a representative, is an employee of the operator shall suffer no loss of pay during the period of his participation in the inspection...."

By creating a subclass of representatives who are entitled to compensation while exercising walkaround rights under § 103(f), Congress clearly recognized that some miners' representatives may be employees of the operator and some may not. Those who are employees are entitled to compensation. Those who are not employees may participate in the inspection, but are not entitled to compensation from the operator under § 103(f) for their participation.

UPL argues that the Commission ignored other reasonable interpretations of the third sentence of § 103(f). Specifically, UPL contends that the third sentence represents a congressional recognition that

> there would be situations in which mine operators might *consent* to walkarounds by non-employee representatives of miners, or in which non-employee representatives had *contractual* rights to enter upon mine property for the purpose of

accompanying inspectors. [Congress] simply wanted to be clear that the compensation right under § 103(f) did not attach in those circumstances.

Brief of Petitioner Utah Power & Light Co. at 19–20.

We are not persuaded by UPL's argument. UPL would have us read a limitation into the statute that has no basis in the statutory language. Furthermore, if a nonemployee representative could exercise walkaround rights only if the operator so consented or the parties' contractual rights so provided, and could not exercise walkaround rights under § 103(f), Congress would have no reason to clarify that a nonemployee representative is not entitled to compensation from the operator under § 103(f).

UPL asserts that selected excerpts from the Act's legislative history support its theory that Congress did not intend to extend walkaround rights to nonemployee representatives. In particular, UPL cites to a debate between Senator Javits, who was a sponsor of the Senate bill that eventually became the Act, and Senator Helms. *See* 123 Cong.Rec. 20,019–20 (1977).

While we agree with UPL that the Senators' debate focused on the importance of miners participating in inspections of the mines in which they work,[2] that focus is explained by the context of the Senators' debate. Senator Helms had introduced an amendment that would strike the third and fifth sentences of the present § 103(f), thereby deleting the provisions concerning compensation for employee representa-

tives. Senator Javits opposed the amendment. *See* 123 Cong.Rec. 20,019 (1977). The two Senators, therefore, were debating the merits of compensating employee representatives. They were not concerned with whether nonemployees, who would not be compensated by the operator, could be miners' representatives for purposes of walkaround rights.[3]

UPL also argues that the purposes of § 103(f), which include encouraging miners to participate in inspections and enhancing miners' understanding and awareness of the health and safety requirements of the Act,[4] will not be furthered by allowing nonemployees to act as miners' representatives under § 103(f). We disagree. A congressional desire to increase miners' knowledge about health and safety issues does not require the exclusion of nonemployees as miners' representatives for walkaround purposes.

Miners may benefit in a number of ways from nonemployee representatives participating in walkarounds. For instance, the ALJ in this case found that Rabbitt had held virtually every job in a coal mine and had received special training in health and safety matters, including seminars sponsored by the MSHA that are given to federal inspectors. Furthermore, Rabbitt had investigated "accidents, disasters, fires, and explosions" in various mines. *Emery Mining Corp.*, 8 F.M.S.H.R.C. at 1186. These findings illustrate that a nonemployee representative may have greater expertise in health and safety matters than an employee representative.

---

**2.** For instance, Senator Javits remarked: "[G]reater miner participation in health and safety matters, we believe, is essential in order to increase miner awareness of the safety and health problems in the mine...." 123 Cong. Rec. 20,019 (1977).

Senator Javits also said:

If miners are going to accompany inspectors, they are going to learn a lot about mine safety, and that will be helpful to other employees and to the mine operator.

In addition, if the worker is along he knows a lot about the premises upon which he works and, therefore, the inspection can be much more thorough. We want to encourage that because we want to avoid, not incur, accidents.

123 Cong.Rec. 20,020 (1977).

**3.** Senator Helms, himself, appeared to recognize that a representative of miners might not be an employee of the operator. In arguing for the adoption of his amendment, the Senator said: "As written, the act states that the representative of the miners, *if* he 'is also an employee of the operator shall suffer no loss of pay as a result of his participation in the inspection.'" 123 Cong. Rec. 20,019 (1977) (emphasis added).

**4.** *See* S.Rep. No. 181, 95th Cong., 1st Sess. 28, *reprinted in* 1977 U.S. Code Cong. & Admin. News 3401, 3428.

In addition, if a nonemployee representative has inspected other mines, his knowledge of those mines may increase his ability to spot problems and to suggest solutions in the mine under consideration. Furthermore, a nonemployee representative is not subject to the same pressures that can be exerted by an operator on an employee representative. Therefore, the underlying purposes of § 103(f), and the Act in general, can be furthered by allowing both employees and nonemployees to act as miners' representatives for walkaround purposes.

UPL contends that statements in an interpretive bulletin issued by the Secretary in April of 1978 support its position that walkaround rights were not intended to extend to nonemployee representatives.[5] While isolated comments in the bulletin may support UPL's position, other comments support the present position of the Secretary, that walkaround rights do extend to nonemployee representatives. The interpretive bulletin is inconclusive on the issue before us. Neither the bulletin nor the legislative history convince us that the interpretation accorded the statute by the agency is unreasonable or unsupportable.

Finally, UPL argues that permitting nonemployees to exercise walkaround rights under § 103(f) impermissibly infringes on an operator's property rights. UPL relies on a number of fourth amendment cases which express the United States Supreme Court's concern with the infringement of property rights by federal inspections. In particular, UPL cites *Donovan v. Dewey*, 452 U.S. 594, 605, 101 S.Ct. 2534, 2541, 69 L.Ed.2d 262 (1981), in which the Court held that warrantless inspections of mines by federal inspectors under the Federal Mine Safety and Health Act are not unreasonable.

UPL contends that although the Act "establishes a predictable and guided federal regulatory presence" so that "the operator of a mine 'is not left to wonder about the purposes of the inspector or the limits of his task,'" *id.* at 604, 101 S.Ct. at 2541 (quoting *United States v. Biswell*, 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87

(1972)), the same cannot be said of a nonemployee miners' representative. UPL cautions that "[t]he Mine Act presents an inherent temptation for abuse by non-employee union representatives," and cites as an example a case in which the UMWA acknowledged that "its designation of walk-around representatives 'was made for purposes unrelated to the Act's safety objectives and thereby constituted an inappropriate exercise of the UMWA's designation right under § 103(f).'" Brief of Petitioner Utah Power & Light Co. at 35 n. 21 (quoting *Nacco Mining Co.*, 6 F.M.S.H.R.C. 2734, 2738 (1984)).

UPL's argument ignores the fact that, as with a federal inspector, the Act clearly spells out the purpose of a miners' representative's participation in an inspection. Section 103(f) provides that an authorized miners' representative shall have the opportunity to accompany a federal inspector during the inspection of a mine "for the purpose of aiding such inspection." While we recognize UPL's concern that walkaround rights may be abused by nonemployee representatives, the potential for abuse does not require a construction of the Act that would exclude nonemployee representatives from exercising walkaround rights altogether. The solution is for the operator to take action against individual instances of abuse when it discovers them.

In sum, we conclude that the Secretary's and the Commission's interpretation of the Act is both reasonable and supportable, and we hold that miners may authorize nonemployees to act as their representatives under § 103(f) of the Act.

## II.

The second issue we must address concerns the Commission's holding that "an operator may not refuse a miner's (sic) representative access to a mine for walkaround purposes solely because the representative has not filed identifying information under [30 C.F.R.,] Part 40." *Emery Mining Corp.*, 10 F.M.S.H.R.C. at 279.

---

5. *See* 43 Fed.Reg. 17,546 (1978).

The regulations set forth in 30 C.F.R., Part 40 provide as follows:

## § 40.1   Definitions.

As used in this Part 40:

(a) "Act" means the Federal Mine Safety and Health Act of 1977.

(b) "Representative of miners" means:

(1) Any person or organization which represents two or more miners at a coal or other mine for the purposes of the Act, and

(2) "Representatives authorized by the miners", "miners or their representative", "authorized miner representative", and other similar terms as they appear in the Act.

## § 40.2   Requirements.

(a) A representative of miners shall file with the Mine Safety and Health Administration District Manager for the district in which the mine is located the information required by § 40.3 of this part. Concurrently, a copy of this information shall be provided to the operator of the mine by the representative of miners.

(b) Miners or their representative organization may appoint or designate different persons to represent them under various sections of the act relating to representatives of miners.

(c) All information filed pursuant to this part shall be maintained by the appropriate Mine Safety and Health Administration District Office and shall be made available for public inspection.

## § 40.3   Filing procedures.

(a) The following information shall be filed by a representative of miners with the appropriate District Manager, with copies to the operators of the affected mines. This information shall be kept current:

(1) The name, address, and telephone number of the representative of miners. If the representative is an organization, the name, address, and telephone number of the organization and the title of the official or position, who is to serve as the representative and his or her telephone number.

(2) The name and address of the operator of the mine where the represented miners work and the name, address, and Mine Safety and Health Administration identification number, if known, of the mine.

(3) A copy of the document evidencing the designation of the representative of miners.

(4) A statement that the person or position named as the representative of miners is the representative for all purposes of the Act; or if the representative's authority is limited, a statement of the limitation.

(5) The names, addresses, and telephone numbers, of any representative to serve in his absence.

(6) A statement that copies of all information filed pursuant to this section have been delivered to the operator of the affected mine, prior to or concurrently with the filing of this statement.

(7) A statement certifying that all information filed is true and correct followed by the signature of the representative of miners.

(b) The representative of miners shall be responsible for ensuring that the appropriate District Manager and operator have received all of the information required by this part and informing such District Manager and operator of any subsequent changes in the information.

## § 40.4   Posting at mine.

A copy of the information provided the operator pursuant to § 40.3 of this part shall be posted upon receipt by the operator on the mine bulletin board and maintained in a current status.

## § 40.5   Termination of designation as representative of miners.

(a) A representative of miners who becomes unable to comply with the requirements of this part shall file a statement with the appropriate District Manager terminating his or her designation.

(b) The Mine Safety and Health Administration shall terminate and remove from its files all designations of representatives of miners which have been terminated pursuant to paragraph (a) of

this section or which are not in compliance with the requirements of this part. The Mine Safety and Health Administration shall notify the operator of such termination.

The Commission, in holding that Emery could not refuse Rabbitt admission to the mine for walkaround purposes just because neither he nor his position were listed on the documents filed with Emery pursuant to Part 40,[6] relied on its holding in *Consolidation Coal Co.,* 3 F.M.S.H.R.C. 617 (1981), which it found "to represent a sound interpretation of section 103(f) and to accurately reflect the Secretary's clearly expressed intent in promulgating his Part 40 regulations." *Emery Mining Corp.,* 10 F.M.S.H.R.C. at 287.

The "Secretary's clearly expressed intent" to which the Commission referred, arose from the preamble to the final Part 40 regulations which stated in part: "However, it should be noted that miners and their representatives do not lose their statutory rights under section 103(f) by their failure to file as representatives of miners under this part." 43 Fed.Reg. 29,508 (1978). The Secretary argues on appeal that the foregoing language "is dispositive of the Secretary's intent in promulgating the Part 40 regulations." Brief for the Secretary of Labor at 26.

In reviewing the Secretary's interpretation of the Part 40 regulations, we are mindful of two rules. First, an agency's regulation "is entitled to deference unless it can be said not to be a reasoned and supportable interpretation of the Act." *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980). Second, " 'a regulation must be interpreted so as to harmonize with and further and not to conflict with the objective of the statute it implements.' " *Emery Mining Corp. v. Secretary of Labor,* 744 F.2d 1411, 1414 (10th Cir.1984) (quoting

*Trustees of Ind. Univ. v. United States,* 618 F.2d 736, 739, 223 Ct.Cl. 88 (1980)).

The Part 40 regulations themselves do not make any exception for representatives of miners who desire to be authorized representatives for § 103(f) purposes. The only place such an exception is set forth is in the aforementioned preamble to the regulations, which is not part of the regulations as published in the Code of Federal Regulations. Neither the preamble nor the Secretary's interpretive bulletin to which it refers,[7] cite any reasons for making an exception to the regulations for purposes of § 103(f). Likewise, the Secretary, here, gives no explanation for such an exception.

Section 103(f) of the Act provides that "[s]ubject to regulations issued by the Secretary, ... a representative *authorized by [the] miners* shall be given the opportunity to accompany the Secretary or his authorized representative during the physical inspection of any coal or other mine." (Emphasis added.) As both the Secretary and the Commission have acknowledged, the Part 40 regulations were implemented pursuant to the authority delegated to the Secretary in § 103(f) of the Act. *See* Brief for Secretary of Labor at 15–16; *Emery Mining Corp.,* 10 F.M.S.H.R.C. at 285. On their face, the regulations apply to all representatives of miners for all purposes under the Act. Thus, the Secretary's interpretation of the regulations is at odds with both the Act and the plain language of the regulations themselves.

Furthermore, valid reasons exist for requiring compliance with the Part 40 regulations for § 103(f) purposes. As Chairman Ford pointed out in his dissent below, the information required to be filed by Part 40 establishes the identity and *bona fides* of each miners' representative, as well as the scope of his authority. *See Emery Mining Corp.,* 10 F.M.S.H.R.C. at 294–95; 30 C.F.R. § 40.3. The information must be provided to both the MSHA district manag-

---

**6.** The information submitted to Emery under Part 40 listed Frank Fitzek as the selected representative of miners and listed thirteen other people, including Mark Larsen, as selected multiple representatives. In the space provided for listing the organization, if any, with which the representative is associated, the document listed the UMWA and reflected that Frank Fitzek, safety chairman, was the representative associated with that organization.

**7.** 43 Fed.Reg. 17,546 (1978).

er and the operator of the affected mine. 30 C.F.R. § 40.3(a). The operator, in turn, is required to post a copy of the information filed on the mine bulletin board, and to keep the information current. *Id.* at § 40.4.

The Secretary has explained the importance of posting the Part 40 information on the mine bulletin board as follows:

> The posting of "Representative of Miner" information will keep the miners abreast of who their representatives are, and for what purpose under the act their representatives serve. This knowledge will better acquaint the miner with MSHA's health and safety programs which will further promote an awareness among the miners of the importance of health and safety at the mine.

43 Fed.Reg. 29,508, 29,509 (1978).

The Secretary and the Commission have stressed the importance of walkaround rights throughout this litigation, and the legislative history of the Act reflects that Congress, too, thought walkaround rights to be important in increasing miner awareness and knowledge of health and safety conditions and requirements. *See* S.Rep. No. 181, 95th Cong., 1st Sess. 28, *reprinted in* 1977 U.S.Code Cong. & Admin.News 3401, 3428; *Secretary of Labor ex rel. Truex*, 8 F.M.S.H.R.C. 1293, 1299 (1986).

Every miner cannot participate in a federal inspection. Therefore, § 103(f) provides that miners may authorize representatives who will participate in the inspection on their behalf. Pursuant to 30 C.F.R. § 40.1(b), any person or organization who represents two or more miners is considered a "miners' representative." The regulatory scheme contemplates that the miners at a mine may have more than one representative for walkaround purposes and may have different representatives for other purposes under the Act. *See id.* at § 40.2(b).

Under such a scheme, it is imperative that both the miners and the operator know who the miners' representatives are and the scope of their authority. As the Secretary has said, knowledge on the part of the miners of the identity, whereabouts, and scope of responsibility of their representatives promotes the purposes of the Act. *See* 43 Fed.Reg. 29,508, 29,509 (1978). Allowing people to act as representatives of miners under § 103(f) does little to further the purposes of the Act unless the miners know who their § 103(f) representatives are so that they may communicate with them regarding health and safety issues related to the inspections.

Furthermore, since a person need only represent two miners to qualify as a "miners' representative," compliance with the requirements of Part 40 is necessary to ensure that a person who attempts to exercise walkaround rights on behalf of miners is in fact "authorized" by the miners to do so, as required by § 103(f) of the Act.

In addition, the Secretary's interpretation of the Part 40 regulations places the operator in a precarious and untenable position. If an operator cannot rely on the Part 40 information to determine whether someone is an authorized representative of miners for walkaround purposes, he has no settled criteria by which to judge an alleged representative's authority.

As the Secretary has recognized, an operator's refusal to permit an authorized miners' representative to exercise the walkaround rights provided in § 103(f) is a violation of the Act for which the operator is subject to a citation under § 104 and a civil penalty under § 105 of the Act. *See* 43 Fed.Reg. 17,546, 17,547 (1978). Furthermore, if the operator fails to abate the violation of § 103(f), not only will it be subject to additional civil penalties for each day of nonabatement, but the inspector may issue a withdrawal order pursuant to § 104(b) of the Act. *See* 43 Fed.Reg. 17,-546, 17,547 (1978).

Thus, the consequences of an operator's refusal to permit an authorized miners' representative to exercise walkaround rights under § 103(f) are quite severe. This severity requires that an operator have a sure and settled method by which to determine who is an authorized miners' representative for walkaround purposes.

Under the method adopted by the Commission in *Consolidation Coal Co.*, and reaffirmed below, whether an operator is justified in denying a purported miners' representative walkaround rights depends on the circumstances of the particular case. *See Consolidation Coal Co.*, 3 F.M.S.H.R.C. at 619. If the inspector does not agree with the operator's determination that someone is not an authorized miners' representative for § 103(f) purposes, as happened in the present case, the operator must risk the issuance of a citation, the assessment of civil penalties, and the possible closure of a portion of the mine before it can get a determination from the Commission whether it was justified in refusing to allow the purported representative to exercise walkaround rights.[8]

The interpretation of the Part 40 regulations asserted by the Secretary and adopted by the Commission is contrary to the plain language of the regulations, fails to further the purposes of the Act, and puts the operator in an untenable position. We therefore reject the Secretary's interpretation and hold that the mandatory requirements of the Part 40 regulations apply to miners' representatives for § 103(f) purposes. Thus, a miners' representative's failure to comply with the regulations entitles an operator to refuse the representative access to the mine for walkaround purposes. Our holding will not work a great hardship on the miners since the requirements of Part 40 are straightforward, and if a miners' representative fails to comply with them and, therefore, cannot exercise walkaround rights, the Act requires the federal inspector to "consult with a reasonable number of miners concerning matters of health and safety in such mine." 30 U.S.C. § 813(f).

In the present case, the parties do not dispute that on April 15, 1986, Rabbitt was not listed as an authorized miners' representative for walkaround purposes on the documents filed with Emery pursuant to Part 40. Therefore, Emery did not violate the Act by refusing Rabbitt access to the mine for walkaround purposes under § 103(f).

### III.

The Commission's decisions in *Emery Mining Corp.*, 10 F.M.S.H.R.C. 276 (1988), and *Utah Power & Light Co.*, 10 F.M.S.H.R.C. 302 (1988), are AFFIRMED in part and REVERSED in part. The citations at issue in those cases are hereby VACATED.

---

**8.** In contrast, if an operator refuses to allow a federal inspector to inspect a mine, the inspector cannot gain immediate access. Instead, the Secretary must bring a civil suit against the operator to enjoin future refusals of admission. *See* 30 U.S.C. § 818(a)(1). Thus, the operator is furnished a forum prior to the inspection in which "to show that a specific search is outside the federal regulatory authority, or to seek from the district court an order accommodating any unusual privacy interests that the mineowner might have." *Donovan*, 452 U.S. at 605, 101 S.Ct. at 2541.