**THUNDER BASIN COAL COMPANY, Petitioner,**

v.

**FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION; and Secretary of Labor, Respondents.**

No. 94–9563.

United States Court of Appeals, Tenth Circuit.

June 7, 1995.

Rehearing Denied Aug. 17, 1995.

---

Thomas F. Linn of Atlantic Richfield Co., Denver, CO, Timothy M. Biddle, Thomas C.

Means, and J. Michael Klise of Crowell and Moring, Washington, DC, for petitioner.

Thomas S. Williamson, Jr., Sol. of Labor, Edward P. Clair, Associate Sol., W. Christian Schumann, Counsel, Appellate Litigation, Colleen A. Geraghty, Atty., U.S. Dept. of Labor, Office of the Sol., Arlington, VA, for respondents.

Before EBEL and BARRETT, Circuit Judges, and KANE,* District Judge.

KANE, District Judge.

Thunder Basin Coal Company (Thunder Basin) brings this petition for review of an order of the Federal Mine Safety and Health Review Commission (Commission) sustaining a citation issued to Thunder Basin arising from an alleged violation of the Federal Mine Safety and Health Act of 1977 (the Mine Act or the Act). Because we find that the Commission's order is based on a permissible construction of the statute, we affirm.[1]

In 1977, Congress passed the Mine Act to improve and promote health and safety in the nation's mines. 30 U.S.C. §§ 801–962. The Act requires the Secretary of Labor to make periodic unannounced inspections of the nation's mines, *id.* at § 813(a), and further provides that a representative of the mine operator and a representative authorized by his miners shall be given an opportunity to accompany the inspector on his inspections of the mines, *id.* at § 813(f).[2] Regulations promulgated under this section define a miners' representative as "[a]ny person or organization which represents two or more miners at a coal or other mine for the purposes of the Act." 30 C.F.R. § 40.1(b)(1). At the heart of this dispute is the regulation requiring the mine owner, after being notified that two or more miners have designated a representative, to post the designation on the miners' bulletin board. *Id.* at § 40.4.

---

* Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Section 813(f) provides:

[A] representative of the operator and a representative authorized by his miners shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any coal or other mine ... for the purpose of aiding such inspection and to participate in pre or post-inspection conferences held at the mine.

Thunder Basin operates the Black Thunder Mine, a large nonunionized surface coal mine in Wyoming. In 1990, eight of the mine's nonunion employees signed an authorization form designating two organizers of the United Mine Workers of America (UMWA), who were not Black Thunder employees, to be their representatives. There is undisputed evidence that the designees hoped their status as miners' representatives would help further their organizing goals. The Mine Safety and Health Administration (MSHA) informed Thunder Basin that it was required to post the designation form on the miners' bulletin board. When Thunder Basin refused to do so, it was cited by the mine inspector for violation of the Act.[3]

Pursuant to statutory procedure, Thunder Basin took its case before an Administrative Law Judge (ALJ) arguing, *inter alia*, that the designation of union agents as miners' representatives in a nonunion mine was an abuse of the Mine Act. The ALJ denied relief to Thunder Basin, holding that the Commission's decision in *Kerr–McGee Coal Corp. v. Secretary of Labor*, 15 F.M.S.H.R.C. 352, 1993 WL 395964 (1993), *aff'd*, 40 F.3d 1257 (D.C.Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995), controlled the disposition of the petition. *Thunder Basin Coal Co. v. Secretary of Labor*, 16 F.M.S.H.R.C. 1849, 1850, 1994 WL 460108, at **1 (1994). In doing so, the ALJ further held that any organizational motivation of the miners' representatives was irrelevant. *Id.* at 1850–51. The Commission refused Thunder Basin's petition for discretionary review, thus making the ALJ's decision the final decision of the Commission. Thunder Basin then timely appealed to this court.

On appeal, Thunder Basin presents three issues: (1) whether, under the Mine Act, paid union organizers can become miners' representatives at a nonunion mine; (2) whether the Commission's decision is in derogation of the National Labor Relations Act (NLRA); and (3) whether Thunder Basin's constitutional rights were violated by the Commission's interpretation and enforcement of the Mine Act.

In reviewing the interpretation of § 103(f) [30 U.S.C. § 813(f) ] asserted by the Secretary of Labor (Secretary) and the Commission, we are mindful of the United States Supreme Court's directions in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted).

> We have held that an agency's interpretation of a statute entrusted to that agency for administration should be accepted if it is a reasonable one, even if another interpretation may exist that is equally reasonable.

*Utah Power & Light Co. v. Secretary of Labor*, 897 F.2d 447, 449–50 (10th Cir.1990) (citations omitted).

---

**3.** At an earlier stage in this struggle, Thunder Basin, immediately upon learning of the MSHA's position regarding the representative of miners' form, filed a complaint for declaratory and injunctive relief and a motion for a temporary restraining order in the United States District Court for the District of Wyoming. The district court permanently enjoined the enforcement of 30 C.F.R. pt. 40 against Thunder Basin. This court reversed, holding that a federal district court lacks jurisdiction over pre-enforcement challenges to MSHA action. *Thunder Basin Coal Co. v. Martin*, 969 F.2d 970, 974–76 (10th Cir. 1992), *aff'd sub nom. Thunder Basin Coal Co. v. Reich*, 510 U.S. ——, ——, 114 S.Ct. 771, 782, 127 L.Ed.2d 29 (1994).

■ We disagree with Thunder Basin's contention that Congress has clearly spoken to the issues presented by this case. The statute addresses neither whether nonemployee union agents can act as miners' representatives at a nonunion mine, nor whether that representative must be motivated solely by health and safety issues. *See Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781 (holding that review standard is whether "Congress has directly spoken to the precise question at issue"). We, therefore, proceed to determine whether the Secretary's decision here is "based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

We begin by discussing the primary antecedents of this case, *Kerr–McGee Coal Corp. v. F.M.S.H.R.C.,* 40 F.3d 1257 (D.C.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995), and *Utah Power & Light,* 897 F.2d 447. In *Utah Power & Light,* this court held that the walkaround rights established in § 813(f) extend to miners' representatives who are not employees of the mine operator. *Id.* at 450–52. The mine at issue in *Utah Power & Light* was unionized, and the person seeking miners' representative rights was a member of the UMWA.

In reaching its holding in *Utah Power & Light,* this court found the language of § 813(f) dispositive. Section 813(f), as noted earlier, provides that "a representative authorized by [the operator's] miners shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any coal or other mine made pursuant to the provisions of subsection (a) of this section." We concluded that "[t]his sentence confers upon the miners the right to authorize a representative for walkaround purposes without any limitation on the employment status of the representative." *Utah Power & Light,* 897 F.2d at 450. Similarly, here, there is no limitation in the statute restricting the walkaround right to only those persons who are not union members or union organizers.

Further, *Utah Power & Light* noted that the general health and safety purposes of the Mine Act can be served "by allowing both employees and nonemployees to act as miners' representatives for walkaround purposes." *Id.* at 452. With evidence in the record that the persons designated by the miners are qualified and knowledgeable and can assist the miners in health and safety matters, it seems the same goal is served here regardless of the representatives' status as union organizers.

The petitioner in *Utah Power & Light,* anticipating the issue presented here, argued that "[t]he Mine Act presents an inherent temptation for abuse by non-employee union representatives." *Id.* In response to this concern we stated:

UPL's argument ignores the fact that, as with a federal inspector, the Act clearly spells out the purpose of a miners' representative's participation in an inspection. Section 103(f) [30 U.S.C. § 813(f) ] provides that an authorized miners' representative shall have the opportunity to accompany a federal inspector during the inspection of a mine "for the purpose of aiding such inspection." While we recognize UPL's concern that walkaround rights may be abused by nonemployee representatives, the potential for abuse does not require a construction of the Act that would exclude nonemployee representatives from exercising walkaround rights altogether. The solution is for the operator to take action against individual instances of abuse when it discovers them. *Id.*

The hypothetical situation envisioned by the petitioner in *Utah Power & Light* became reality and reached the courts in *Kerr–McGee,* 40 F.3d 1257. There, the United States Court of Appeals for the District of Columbia Circuit, relying heavily on *Utah Power & Light,* decided the same issue we are presented with in this case and held that the walkaround rights granted under § 813(f) extend to nonemployee union agents. *Kerr–McGee,* 40 F.3d at 1263. The District of Columbia Circuit rejected the argument that the Act and its legislative history contemplated direct actions by miners but not by unions. Noting that the regulations define "representative of miners" to include "[a]ny person or organization which represents two or more miners at a coal or other

mine for purposes of the Act. . . .," 30 C.F.R. § 40.1(ab)(1), the court held that "[t]he definition, by specifically including 'organizations,' appears to contemplate that labor unions may serve as miners' representatives." *Kerr–McGee*, 40 F.3d at 1262. The *Kerr–McGee* court further held that the representative organization need not be selected by a majority of the miners. "[T]he Preamble to the Part 40 regulations expressly considers and rejects the notion that miners' representatives must be selected by a majority of miners." *Id.*

In response to Kerr–McGee's argument that the union's use of the miners' representative designation for organizing purposes constituted an abuse of the Mine Act, the District of Columbia Circuit relied on this court's analysis in *Utah Power & Light:*

> [A]s the Tenth Circuit pointed out in rejecting any such automatic presumption of abuse, "the potential for abuse does not require a construction of the Act that would exclude nonemployee representatives from exercising walkaround rights altogether. The solution is for the operator to take action against individual instances of abuse when it discovers them."

*Id.* at 1264 (quoting *Utah Power & Light*, 897 F.2d at 452). Thus, the court in *Kerr–McGee* concluded that "[t]he motivations of a miners' representative are irrelevant so long as the representative, through its actions, does not abuse its designation and serves the objectives of the Act." *Id.*

In its argument to the District of Columbia Circuit, Kerr–McGee maintained that, in determining whether a union could act as a miners' representative, the Secretary was required by *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), to balance the mine owner's property interests against the safety goals of the Act. The court, noting that the Act grants only limited access to the mine for purposes of health and safety, held that "Congress, rather than the agency, has conducted the balancing, [thus making] the *Lechmere* standard . . . inapplicable." *Kerr–McGee*, 40 F.3d at 1265.

Finally, the court in *Kerr–McGee* held that "[b]y allowing non-elected unions to serve as miners' representatives, the Secretary has not disregarded any 'other and equally important Congressional objectives' under the NLRA." *Id.*

In an effort to distinguish its case, Thunder Basin argues that the court in *Kerr–McGee* wrongly interpreted *Utah Power & Light*. Thunder Basin maintains that *Utah Power & Light* implicitly limits the purpose of the walkaround right to aiding in an inspection and that any other purpose is an "ipso facto" abuse of the Mine Act. Appellant's Br. at 18. Thus, according to Thunder Basin, because the miners' representatives here also hoped to further their organizing activity, they can be barred from designation.

In *Utah Power & Light*, we observed that "the Act clearly spells out the purpose of a miners' representative's participation in an inspection. Section 103(f) [30 U.S.C. § 813(f) ] provides that an authorized miners' representative shall have the opportunity to accompany a federal inspector during the inspection of a mine 'for the purpose of aiding such inspection.' " 897 F.2d at 452. As noted above, Thunder Basin reasons from this that any other purpose is "ipso facto" abusive. Thunder Basin reads our holding in *Utah Power & Light* too narrowly. Thunder Basin is in effect arguing for a mine operator's privilege to bar certain designated miners' representatives from the outset if there is evidence that multiple purposes may be part of the representative's agenda. We rejected that "potential for abuse" argument in *Utah Power & Light*, and we do so again here.

In *Utah Power & Light*, in response to the hypothetical spectre of abuse by a union representative, we stated that "the potential for abuse does not require a construction of the Act that would exclude nonemployee representatives from exercising walkaround rights altogether. The solution is for the operator to take action against individual instances of abuse when it discovers them." *Id.*

We reiterated this analysis in *Thunder Basin Coal Co. v. Martin*, 969 F.2d at 976–77, where we acknowledged that being named a miners' representative " 'for purposes unrelated to the Act's safety objectives

[would constitute] an inappropriate exercise of the UMWA's designation rights under § [813](f)....'" Far from viewing this situation as grounds for disallowing a person from acting as a miners' representative *ab initio*, we went on to repeat that the proper course for a mine owner "would be to 'take action against individual instances of abuse when it discovers them.'" *Id.* at 977 (quoting *Utah Power & Light*, 897 F.2d at 452).

This analysis was endorsed by the Supreme Court in *Thunder Basin Coal Co. v. Reich*, — U.S. —, —, 114 S.Ct. 771, 781, 127 L.Ed.2d 29 (1994), *aff'g Thunder Basin Coal Co. v. Martin*, 969 F.2d 970, where the Court stated: "Although it is possible that a miners' representative could abuse his privileges, we agree with the [Tenth Circuit] Court of Appeals that petitioner has failed to demonstrate that such abuse, entirely hypothetical on the record before us, cannot be remedied on an individual basis under the Mine Act." *Id.* (citing *Martin*, 969 F.2d at 976–77 and n. 6; *Utah Power & Light*, 897 F.2d at 452; *Kerr–McGee Coal Corp. v. Secretary of Labor*, 15 F.M.S.H.R.C. at 361–362). This standard leaves no room for an operator to refuse to accept a properly designated miners' representative because of some perceived potential for "per se abuse." We hold, therefore, that the Commission's interpretation of the Act to permit a nonemployee union agent to function as a miners' representative is a permissible construction of the statute. As in *Utah Power & Light*, a contrary conclusion "would have us read a limitation into the statute that has no basis in the statutory language." *Utah Power & Light*, 897 F.2d at 451.

Thunder Basin argues that the Commission here, by focusing only on abuses that may occur during walkaround, ignored the many other rights that flow from designation as a miners' representative and which, presumably, could also present opportunities for abuse.[4] We find no basis upon which to conclude, however, that the Commission did not also consider the broader powers accorded a miners' representative. As discussed above, the Commission in this case, through the ALJ, relied on *Kerr–McGee* for its conclusion. *Kerr–McGee*, in turn, based its holding in part on analysis of the definition of "representative of miners" found in 30 C.F.R. § 40.1. *Kerr–McGee*, 15 F.M.S.H.R.C. at 356. There, the Commission sustained the ALJ's conclusion "that a union may represent miners for walkaround *and other Mine Act purposes*." *Id.* (emphasis added). This is explicit evidence that the Commission in *Kerr–McGee* (and later in this case) considered the status of miners' representative with all its attendant features. Nothing in *Kerr–McGee*, either at the Commission level or when later affirmed by the District of Columbia Circuit, limits its holding to recognize a miners' representative's right to accompany the inspector but otherwise to preclude the exercise of his or her auxiliary statutory rights and duties.[5]

Further, the Supreme Court's opinion in *Reich*, — U.S. at —, 114 S.Ct. 771, can be fairly read to reject Thunder Basin's argu-

---

4. In *Reich*, — U.S. at — n. 2, 114 S.Ct. at 774 n. 2, the Supreme Court noted that:

Miners' representatives are entitled to receive "a copy of any order, citation, notice, or decision" issued by the Secretary to the mine operator, 30 U.S.C. § 819(b), as well as copies of certain mine health and safety records available to the Secretary regarding employee exposure to toxic or other harmful agents, § 813(c), daily mine inspections, 30 C.F.R. § 77.1713, and plans for mine excavation, § 77.1101, roof control, § 75.220, and employee training, §§ 48.3 and 48.23.

Further,

Miners' representatives, among other things, may inform the Secretary of mine hazards, 30 U.S.C. § 813(g)(2), request immediate additional inspections of the mine when a violation or imminent danger exists, § 813(g)(1), and participate in proceedings before the Federal Mine Safety and Health Review Commission, § 815(d). Representatives may request or challenge certain enforcement actions against a mine operator, §§ 815(d) and 817(e)(1), contest the time an operator is given to abate a Mine Act violation, § 815(d), and initiate proceedings to modify the application of health and safety standards, 30 C.F.R. § 44.3.

*Id.* at n. 3.

5. We note that "[m]iners or their representative organization may appoint or designate different persons to represent them under various sections of the act relating to representatives of miners." 30 C.F.R. § 40.2(b). The miners in this case, however, did not differentiate among the various duties assigned to their designated representatives.

ment. In *Reich*, the Supreme Court noted early in the opinion the various powers and duties attendant upon designation as a miners' representative. *Id.* at —— & n. 2 & n. 3, 114 S.Ct. at 774 & n. 2 & n. 3. The Court later reasoned that "the potential for abuse of the miners' representative position appears limited ... [because] ... designation as a miners' representative does not convey an uncontrolled access right to the mine property to engage in any activity that the miners' representative wants." *Id.* at ——, 114 S.Ct. at 781 (internal quotation omitted). We read this analysis to include all of the rights accorded the miners' representative.

█  Thunder Basin next argues that the Commission's ruling deprives it of its rights under the National Labor Relations Act (NLRA) and, citing *Lechmere*, 502 U.S. at 527, 112 S.Ct. at 842–43, that the Commission should have balanced Thunder Basin's property rights with the dictates of the Act. In *Reich*, the Supreme Court rejected this argument:

> Without addressing the merits of petitioner's underlying claim, we note that petitioner appears to misconstrue *Lechmere, Inc. v. NLRB*, 502 U.S. [527], 112 S.Ct. 841, 117 L.Ed.2d 79 (1992). The right of employers to exclude union organizers from their private property emanates from state common law, and while this right is not superseded by the NLRA, nothing in the NLRA expressly protects it. To the contrary, this Court consistently has maintained that the NLRA may entitle union employees to obtain access to an employer's property under limited circumstances. Moreover, in a related context, the Court has held that Congress' interest in regulating the mining industry may justify limiting the private property interests of mine operators.

*Reich*, —— U.S. at —— n. 21, 114 S.Ct. at 781 n. 21 (citations omitted). Thunder Basin's reliance, therefore, on *Lechmere* is misplaced. *See also Kerr–McGee*, 40 F.3d at 1265 (holding it unnecessary to balance property and union interests because Congress, rather than the agency, had already done the balancing).

Finally, Thunder Basin argues that the citation it received violates its due process rights under the Fifth Amendment. As noted by the Supreme Court, the rights of a miners' representative do not include unimpeded access to mine property for any conceivable activity. *Reich*, —— U.S. at ——, 114 S.Ct. at 781. Indeed, "the potential for abuse of the miners' representative position appears limited." *Id.* And, more pertinent to a due process question, this court has held that the Mine Act adequately protects a mine operator's due process rights. *Martin*, 969 F.2d at 975–76 (detailing statutory procedure and finding that "a full and adequate hearing is provided before any penalty actually is imposed"). We, therefore, find no constitutional infirmity in the Commission's decision.

The judgment of the Federal Mine Safety and Health Review Commission is AFFIRMED.