**COUNCIL OF the SOUTHERN MOUNTAINS, INC., Petitioner,**

v.

**FEDERAL MINE SAFETY & HEALTH REVIEW COMMISSION, et al., Respondents.**

No. 84–1092.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 16, 1984.

Decided Jan. 15, 1985.

L. Thomas Galloway, Washington, D.C., for petitioner.

Jack W. Burtch, Jr., Richmond, Va., for respondents, Martin County Coal Corp. James A. Lastowka and L. Joseph Ferrara, Washington, D.C., entered appearances for respondent, Federal Mine Safety & Health Review Com'n.

Before WALD, EDWARDS and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case presents the question whether a mine operator violates section 105(c)(1) of the Federal Mine Safety and Health Act of

1977 ("Mine Act" or the "Act") when it refuses to allow nonemployee representatives of coal miners to monitor safety training programs on mine property. Section 105(c)(1) prohibits mine operators from discriminating against or otherwise interfering with the exercise of the statutory rights of any miner or representative of miners. Our review of the Mine Act and its legislative history reveals no statutory right of nonemployee representatives to monitor on-site training classes. Consequently, we affirm the decision of the Federal Mine Safety and Health Review Commission that respondent Martin County Coal Corp. ("Martin") did not violate section 105(c)(1) when it refused to permit petitioner Council of the Southern Mountains (the "Council") to attend training sessions.

We recognize that the petitioner has raised an important question concerning whether miners' representatives can effectively exercise rights granted them by the Act and its implementing regulations without a concomitant right to monitor safety training classes. The appropriate way to resolve this issue, however, is for the Council to petition the Secretary of Labor (the "Secretary") for a rulemaking. In this instance it is clear that Congress intended for the Secretary, not the courts, to elaborate the statute and to develop means to effectuate its purposes.

## I. BACKGROUND

### A. *The Mine Act*

In 1977, Congress combined protection for all miners previously covered under two separate statutes, the Federal Metal and Nonmetallic Mine Safety Act of 1966,[1] and the Federal Coal Mine Health and Safety Act of 1969,[2] under the Federal Mine Safety and Health Act of 1977,[3] and assigned its administration to the Department of Labor.[4] The Secretary of Labor was given the responsibility of promulgating mandatory health and safety standards,[5] while an independent adjudicatory entity, the Federal Mine Safety and Health Review Commission ("FMSHRC" or the "Commission"), was established to settle, in the first instance, disputes arising under the new Act.[6]

This legislation was, in large part, a response to the history of frequent and tragic mining disasters occurring in the United States, such as those at Sunshine Silver Mine, Buffalo Creek, and Blacksville in 1972, at Scotia in 1976, and at Tower City in 1977. In Congress, there was a widely held belief that many mining deaths could have been avoided if the miners had been adequately trained in emergency safety techniques. At the Sunshine Mine, for example, ninety-one miners died of asphyxiation either because they did not know how to use self-rescuers or because of the failure of mine management to provide a secondary escape route. At the Blacksville mine, miners were trapped when a piece of equipment caught fire, and then died because those at the scene of the fire had not been adequately trained in emergency procedures.[7]

In an effort to curb mining tragedies, Congress required in section 115[8] of the 1977 Act that all miners receive regular and adequate health and safety training. This section compels mine operators to im-

---

1. Pub.L. No. 89–577, §§ 2–21, 80 Stat. 772 (formerly codified at 30 U.S.C. §§ 721–740), *repealed by* the Federal Coal Mine Health and Safety Act of 1977 ("Mine Act"), Pub.L. No. 95–164, § 306(a), 91 Stat. 1290, 1322 (1977) (codified at 30 U.S.C. §§ 801 *et seq.* (1982)).

2. Pub.L. No. 91–173, 83 Stat. 742, *amended by* the Mine Act, *supra* note 1.

3. 30 U.S.C. §§ 801 *et seq.*

4. *See, e.g.,* S.REP. No. 181, 95th Cong., 1st Sess. 1, 11 (1977) (hereinafter referred to as "S.REP. No. 181"), *reprinted in* 1977 U.S.CODE CONG. & AD.NEWS

3401 and SENATE SUBCOMMITTEE ON LABOR, COMMITTEE ON HUMAN RESOURCES, 95th CONG., 2d SESS., LEGISLATIVE HISTORY OF THE FEDERAL MINE SAFETY AND HEALTH ACT OF 1977, 589 (1978).

5. Section 101, 30 U.S.C. § 811.

6. Section 113, 30 U.S.C. § 823.

7. *See* S.REP. No. 181, *supra* note 4 at 4–5, 49–51.

8. 30 U.S.C. § 825.

plement training programs which have been approved by the Secretary. It specifies, *inter alia*, subjects of instruction and the minimum number of hours of requisite training for miners of different experience levels, and instructs the Secretary to promulgate more detailed regulations regarding these programs.[9]

Congress further recognized that if its national mine safety and health program was to be truly effective, miners and their representatives must play an active part in enforcing the Act.[10] In order to promote miner and representative participation, section 105(c)(1) of the Act protects both miners and their representatives from discharge or any other form of interference or discrimination because of the exercise of a statutory right afforded by the Act,[11] in-

---

9. Section 115, 30 U.S.C. § 825, reads in pertinent part as follows:

§ 825. Mandatory health and safety training (a) Approved program; regulations. Each operator of a coal or other mine shall have a health and safety training program which *shall be approved by the Secretary.* The Secretary shall promulgate regulations with respect to such health and safety training programs not more than 180 days after the effective date of the Federal Mine Safety and Health Amendments Act of 1977. Each training program approved by the Secretary shall provide as a minimum that—

(1) new miners having no underground mining experience shall receive no less than 40 hours of training if they are to work underground. Such training shall include instruction in the statutory rights of miners and their representatives under this Act, use of the self-rescue device and use of respiratory devices, hazard recognition, escape ways, walk around training, emergency procedures, basic ventilation, basic roof control, electrical hazards, first aid, and the health and safety aspects of the task to which he will be assigned;

(2) new miners having no surface mining experience shall receive no less than 24 hours of training if they are to work on the surface. Such training shall include instruction in the statutory rights of miners and their representatives under this chapter, use of the self-rescue device where appropriate and use of respiratory devices where appropriate, hazard recognition, emergency procedures, electrical hazards, first aid, walk around training and the health and safety aspects of the task to which he will be assigned;

(3) all miners shall receive no less than eight hours of refresher training no less frequently than once each 12 months, except that miners already employed on the effective date of the Federal Mine Safety and Health Amendments Act of 1977 shall receive this refresher training no more than 90 days after the date of approval of the training plan required by this section;

(4) any miner who is reassigned to a new task in which he has had no previous work experience shall receive training in accordance with a training plan approved by the Secretary under this subsection in the safety and health aspects specific to that task prior to performing that task;

(5) any training required by paragraphs (1), (2) or (4) shall include a period of training as closely related as is practicable to the work in which the miner is to be engaged.

(b) *Training compensation.* Any health and safety training provided under subsection (a) of this section shall be provided during normal working hours. Miners shall be paid at their normal rate of compensation while they take such training, and new miners shall be paid at their starting wage rate when they take the new miner training. If such training shall be given at a location other than the normal place of work, miners shall also be compensated for the additional costs they may incur in attending such training sessions.

(c) Certificate. Upon completion of each training program, each operator shall certify, on a form approved by the Secretary, that the miner has received the specified training in each subject area of the approved health and safety training plan. A certificate for each miner shall be maintained by the operator, and shall be available for inspection at the mine site, and a copy thereof shall be given to each miner at the completion of such training. When a miner leaves the operator's employ, he shall be entitled to a copy of his health and safety training certificates. False certification by an operator that training was given shall be punishable under section 820(a) and (f) of this title; and each health and safety training certificate shall indicate on its face, in bold letters, printed in a conspicuous manner the fact that such false certification is so punishable.

10. See, e.g., S.Rep. No. 181, *supra* note 4 at 35.

11. Section 105(c)(1), 30 U.S.C. § 815(c)(1), reads in pertinent part:

No person shall discharge or in any manner discriminate against or cause to be discharged or cause discrimination against or otherwise interfere with the exercise of the statutory rights of any miner, representative of miners or applicant for employment in any coal or other mine subject to this Act ... because of the exercise by such miner, representative of

cluding rights related to safety training.[12]

Congress enumerated certain statutory rights which miners' representatives acquired under the Act.[13] For example, a miners' representative can obtain an immediate federal inspection of a mine when she or he has reasonable grounds to believe that there has been a violation of the Act or of a mandatory health and safety standard,[14] including a violation of training program standards. A miners' representative also has the right to accompany the Secretary or the Secretary's representative on specified inspections of the mine.[15] The Act allows interested persons, including representatives, to inspect certificates of miners' completion of mandatory training programs at the mine site.[16] However, Congress did not expressly provide for the on-site monitoring of training programs. Rather, Congress left the details of designing and supervising the training programs to the Secretary of Labor.

## B. *History of this Action*

The Council describes itself as a grassroots citizen's organization which, since 1913, has worked to improve health and safety conditions in the Appalachian coal mines.[17] The petitioner is registered with the Mine Safety and Health Administration ("MSHA") as the representative,[18] for purposes of the Act,[19] of miners at the Martin County Coal mines 1–C and 1–S in Martin County, Kentucky. As the miners' representative, the Council has taken an active interest in the development and implementation of safety training programs at these mines. At issue here is the Council's desire to monitor training classes at Martin to ensure that miners receive adequate safety instruction as mandated by the Mine Act.

It is unnecessary to review in detail the somewhat complicated history of the Council's requests of Martin that it be allowed to monitor safety training classes.[20] It suffices to note here that Martin repeatedly refused permission for the Council to enter mine property for that purpose [21] and that, as a consequence, the Council initiated the instant proceeding, alleging that this refusal constituted interference with its exercise of a right granted by the Act, in violation of section 105(c)(1).

The Administrative Law Judge ("ALJ") who first heard the case ruled in the Council's favor. His interpretation of section 115 led him "to find that nonemployee miners' representatives ... have an implied right" to observe safety instruction.[22] The ALJ considered the requirement in section

---

miners or applicant for employment on behalf of himself or others of any statutory right afforded by this chapter.

Subsections (c)(2)–(3) provide procedures by which a miner, applicant for employment, or miners' representative, who believes that he or she has been interfered with or discriminated against in violation of subsection (c)(1), may request relief from the Secretary and ultimately from the Commission. Judicial review of Commission orders is provided for by § 105(c)(3), 30 U.S.C. § 815(c)(3), and § 106, 30 U.S.C. § 816.

**12.** S.Rep. No. 181, *supra* note 4 at 36.

**13.** The following list of explicit statutory rights is intended to be illustrative, rather than exhaustive.

**14.** Section 103(g), 30 U.S.C. § 813(g).

**15.** Section 103(f), 30 U.S.C. § 813(f).

**16.** Section 115(c), 30 U.S.C. § 825(c).

**17.** Brief for Petitioner at 2.

**18.** The Council is a nonemployee miners' representative. The Mine Act, however, merely refers to "representatives" and does not articulate any distinction between the rights of employee and nonemployee representatives.

**19.** *See* 30 C.F.R. Part 40 (1983) (filing and other administrative requirements for miners' representatives).

**20.** For a more complete statement of the procedural history of this case, see *Council of Southern Mountains, Inc. v. Martin County Coal Corp.,* 6 F.M.S.H.R.C. 206, 206–08 (1984).

**21.** The Council sought independent access to mine property to monitor classes. It was not, in these instances, asserting its right under § 103(f), 30 U.S.C. § 813(f), to accompany a federal mine inspector investigating mines for compliance with safety training requirements.

**22.** *Martin County Coal Corp. v. Secretary of Labor,* 2 F.M.S.H.R.C. 2829, 2841 (1980).

115(a)(1) that miners be instructed in their statutory rights and in those of their representatives, and also the indication in section 115(b) that training may sometimes be conducted at a location other than the normal place of work, and from these provisions he inferred a statutory right of representatives to monitor safety instruction.[23] On this basis, the ALJ held that Martin violated section 105(c)(1) of the Act by refusing to allow the Council to monitor training sessions.[24]

On discretionary review, the FMSHRC reversed the ALJ.[25] Observing that "[n]either the Mine Act nor its legislative history —nor, for that matter, the Secretary's extensive regulations implementing section 115 of the Act—refers to a right of miners' representatives to monitor training classes," [26] the Commission held that Martin's refusal to allow the Council to monitor safety instruction did not violate section 105(c)(1) of the Act. The Council appeals the FMSHRC's decision to this court.

## II. ANALYSIS

A mine operator does not violate section 105(c)(1) unless it discriminates against or otherwise interferes with the exercise of the statutory rights of miners or their representatives.[27] It is clear, therefore, that unless the Council has a statutory right to enter mine property for the purpose of monitoring safety instruction, Martin's refusal to accede to the Council's demands for access cannot violate section 105(c)(1).

Our review of the statute and its legislative history, like the Commission's, yields no indication that Congress intended to confer such a right on miners' representatives. Section 115 requires mine operators to offer their miners adequate safety and health training and commands the Secretary to promptly promulgate regulations concerning these training programs. As the Commission held, this portion of the statute does not compel "a monitoring right for non-employee miners' representatives on mine property," [28] nor does any other section of the Act. Although the legislative history demonstrates a strong congressional concern over the problem of poorly trained miners,[29] it contains no suggestion that Congress considered the monitoring issue.[30] Consequently, we are constrained to hold that the Mine Act does not provide non-employee miners' representatives with a statutory right to monitor onsite safety training and, therefore, that Martin County Coal did not violate section 105(c)(1) by refusing to allow the Council to

---

**23.** Id. at 2840–41.

**24.** Id. at 2843. In a consolidated proceeding, the ALJ held that the Secretary's regulation governing the establishment and implementation of training programs, 30 C.F.R. § 48.3, was not violated by the respondent's refusal to permit the Council to monitor training classes. Id. at 2838.

**25.** Council of Southern Mountains, 6 F.M.S.H.R.C. 206 (1984).

**26.** Id. at 208–09.

**27.** See supra notes 11–12 and accompanying text.

**28.** Council of Southern Mountains, 6 F.M.S.H.R.C. at 211.

**29.** See, e.g., S.REP. No. 181, supra note 4 at 49–50 ("The Committee considers the presence of miners in a dangerous mine environment who have

not had even rudimentary training in self-preservation and safety practices inexcusable....").

**30.** By contrast, our finding in Phillips v. Interior Board of Mine Operations Appeals, 500 F.2d 772 (D.C.Cir.1974), cert. denied, sub nom. Kentucky Carbon Corp. v. Interior Board of Mine Operations Appeals, 420 U.S. 938, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975), that a miner possessed a statutory right to refuse to work in unsafe conditions when he reported these conditions to his foreman was closely tied to the text of the statute at issue in that case, which protected miners from discharge for refusal to work in dangerous conditions when they reported the conditions to the Secretary or his representative. Id. at 779. Similarly, the Commission found a statutory right to refuse work under the Mine Act in Secretary ex rel. Pasula v. Consolidation Coal Co., 2 F.M.S.H.R.C. 2786, 2789–93 (1980), rev'd on other grounds sub nom. Consolidation Coal Co. v. Marshall, 663 F.2d 1211 (3d Cir.1981), on the basis of congressional intent evidenced in the Act's legislative history.

observe safety instruction conducted on mine property.[31]

In its briefs and at oral argument, the petitioner contended that other explicit rights given to miners' representatives by the Act and the training program regulations issued by the Secretary,[32] such as a representative's right under section 103(g) to request a federal mine inspection when she or he has reasonable grounds to believe that an operator has violated training program standards, cannot be exercised effectively without a corresponding right to monitor training classes. This argument raises an important and wholly legitimate concern, for it is surely possible that representatives cannot adequately fulfill their statutory functions and serve the interests of miners without a right to observe training sessions. Nevertheless, there is no reasonable way for the court to assess this issue on the record at hand. In our view, the proper method of resolving this issue is for the Council to petition the Secretary for appropriate rulemaking.[33] It is clear from section 115(a) that Congress intended that the Secretary, not the courts, articulate the specific details regarding the development, implementation, and supervision of safety training programs. Moreover, the Secretary is better able, given his expertise concerning mine operations and his ability to gather evidence, to work out the minutiae of a monitoring right—such as who has access, when, for how long, and under what conditions—than is an appellate court, especially in this case, given the very limited factual record that is before us.

## III. CONCLUSION

Neither the Mine Act nor its legislative history reveal any congressional intent to confer upon nonemployee miners' representatives a statutory right to monitor on mine property the safety training programs required by section 115 of the Act. We therefore affirm the FMSHRC's decision that Martin County Coal did not violate section 105(c)(1) of the Mine Act when it refused to allow the Council to observe its safety instruction classes. The Council's argument that it cannot effectively exercise its explicit statutory and regulatory rights without a concomitant monitoring right must be addressed to the Secretary of Labor.

*Affirmed.*

---

**31.** Our holding is limited to situations where miners' representatives assert an independent right to enter mine property for monitoring purposes. It has no application to instances where representatives assert a statutory right under § 103(f) to accompany federal mine inspectors investigating mines for compliance with statutory or regulatory safety training requirements.

**32.** 30 C.F.R. §§ 48.1 *et seq.* (1983).

**33.** We offer no opinion here as to the appropriate reach of any rulemaking that might be conducted by the Secretary. We note that, in the consolidated proceedings below, counsel for the Secretary advanced the Secretary's interpretation that a monitoring right may be inferred from the present regulations. *See* Tr. of Hearing before ALJ 12–18, *reprinted in* Joint Appendix 54–60.