40 F.3d 1257
 149 L.R.R.M. (BNA) 2675, 309 U.S.App.D.C.
226, 63 USLW 2358,
130 Lab.Cas. P 11,368,
1994 O.S.H.D. (CCH) P 30,630
 KERR-McGEE COAL CORPORATION, Petitioner,
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, et al.,
Respondents.
International Union, United Mine Workers of America, Intervenor.
American Mining Congress; National Coal Association;
Wyoming Mining Association, amici curiae.
 No. 93-1250.
United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 4, 1994.
Decided Dec. 2, 1994.
Rehearing and Suggestion for Rehearing
In Banc Denied Jan. 17, 1995.
 
 Charles W. Newcom, Denver, CO, argued the cause and filed the briefs, for petitioner.
 Colleen A. Geraghty, Atty., U.S. Dept. of Labor, Washington, DC, argued the cause, for respondents. With her on the brief was W. Christian Schumann, counsel, U.S. Dept. of Labor, Washington, DC. L. Joseph Ferrara, Atty., Federal Mine Safety and Health Review Com'n, Washington, DC, entered an appearance.
 Robert H. Stropp, Jr., Washington, DC, filed the brief for intervenor. Mary L. Jordan, Washington, DC, entered an appearance.
 Thomas C. Means, J. Michael Klise, Mark G. Ellis, and Harold P. Quinn, Washington, DC, filed the brief, for amici curiae.
 Before: SILBERMAN, SENTELLE, and ROGERS, Circuit Judges.
 Opinion for the court by Circuit Judge ROGERS.
 Concurring opinion by Circuit Judge SENTELLE.
 ROGERS, Circuit Judge:
 
 
 1
 This appeal presents the question whether a non-elected labor organization can serve as a miners' representative at a non-unionized mine under the Federal Mine Safety and Health Amendments Act of 1977 (the "Act"). Petitioner Kerr-McGee Coal Corporation seeks review of a decision by the Federal Mine Safety and Health Review Commission requiring Kerr-McGee to recognize the United Mine Workers of America and two of its employees as miners' representatives. Kerr-McGee contends that unions and other third parties may not serve as miners' representatives unless a majority of miners has appointed them as a collective bargaining agent under the National Labor Relations Act, 29 U.S.C. Sec. 151 et seq. (as amended) (1988) ("NLRA"), since any other interpretation would create "significant problems counterproductive to health and safety." In view of the broad grant of authority to the Secretary of Labor, however, the interpretation of the Act proposed by the Secretary and adopted by the Commission does not conflict with the language of the statute or its legislative history and is therefore "reasonably defensible." Simpson v. Federal Mine Safety and Health Review Comm'n, 842 F.2d 453, 458 (D.C.Cir.1988). Finally, Kerr-McGee's reliance on Lechmere, Inc. v. NLRB, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), is misplaced in view of the fact that Congress has determined the appropriate accommodation between mine owners' property interests and the safety objectives of the Act. Accordingly, we deny the petition for review.
 
 I.
 
 2
 The Federal Mine Safety and Health Amendments Act of 1977,[1] which Congress enacted "to promote safety and health in the mining industry,"[2] vests broad authority in the Secretary of Labor to promulgate regulations governing the mining industry and to investigate and remedy safety concerns.[3] Under Sec. 103(a) of the Act, the Secretary is to make "frequent" inspections of mines, including periodic visits "(1) [to] obtain[ ], utiliz[e], and disseminat[e] information relating to health and safety conditions, the causes of accidents, and the causes of diseases and physical impairments originating in such mines[, and] (2)[to] gather[ ] information with respect to mandatory health or safety standards." 30 U.S.C. Sec. 813(a). In addition, each year the Secretary must make at least two unannounced inspections of each surface mine for the purpose of "(3) determining whether an imminent danger exists, and (4) determining whether there is compliance" with the statutes and regulations that govern mines. Id.
 
 
 3
 In order to encourage miner awareness of health and safety concerns, Congress provided for miner participation in the inspection process.[4] Thus, Sec. 103(f) of the Act confers "walkaround rights" on designated representatives of the miners:
 
 
 4
 Subject to regulations issued by the Secretary, ... a representative authorized by his miners shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection ... for the purpose of aiding such inspection and to participate in pre- or post-inspection conferences held at the mine.
 
 
 5
 30 U.S.C. Sec. 813(f). Miners' representatives may also participate in other procedures designed to address health and safety concerns.[5]
 
 
 6
 The Act contemplates non-employee third parties serving as "miners' representatives." The statute provides only that the representative must be "authorized by his miners" and that any "representative of miners who is also an employee of the operator shall suffer no loss of pay during the period of his participation in the inspection...." Id. By regulation, however, the Secretary has defined "miners' representative" to include "[a]ny person or organization which represents two or more miners ... for the purposes of the Act...." 30 C.F.R. Sec. 40.1(b)(1) (1993).
 
 
 7
 Of significance here, the regulations also provide that after receiving notice that two or more miners have appointed a representative, the mine operator is required to post the designation on the mine's bulletin board. Id. Sec. 40.4. Under the Act, if the mine operator violates statutory or regulatory requirements, the Secretary shall issue a citation and may recommend civil penalties of up to $50,000. 30 U.S.C. Secs. 814(a), 815(a), 820(a) (1988 & Supp. IV 1992). If the mine operator fails to abate the violation within the deadline set by the Secretary, the Secretary may fine the operator up to $5,000 per day that the violation continues. Id. Sec. 820(b). The Secretary acted under this provision of the Act in issuing the citation challenged in the instant appeal.
 
 
 8
 Kerr-McGee owns and operates the Jacobs Ranch Mine, a non-unionized surface coal mine in Campbell County, Wyoming. In July, 1990, seven miners employed at the mine designated the United Mine Workers of America ("UMWA") and two of its employees as their miners' representative. Prior to the designation of the UMWA, there had never been a miners' representative at the Jacobs Ranch Mine. The parties agree that one of the UMWA miners' representatives had relocated to Wyoming "for the purpose of unionizing the coal miners in the Powder River Basin, including the miners at the Jacobs Ranch Mine."
 
 
 9
 The UMWA subsequently mailed copies of the designation form to the Jacobs Ranch Mine and to the Mine Safety and Health Administration ("MSHA") office in Denver, Colorado.[6] Kerr-McGee officials at the mine decided not to post the designation form. After receiving a complaint that Kerr-McGee had violated 30 C.F.R. Sec. 40.4 by failing to post the form,[7] a MSHA coal mine inspector visited the mine and showed a copy of the complaint to the Manager of Administration. When the Jacobs Ranch Mine repeated its unwillingness to post the form, the inspector issued a citation under 30 U.S.C. Sec. 814(a).[8] Kerr-McGee refused to comply with the abatement order, and the inspector issued an order for failure to abate the citation, which Kerr-McGee contested to the Commission.
 
 
 10
 Before a Commission administrative law judge ("ALJ"), Kerr-McGee argued that neither the Act nor the regulations required it to recognize the UMWA as a miners' representative because the UMWA was neither a Jacobs Ranch Mine employee nor an official collective bargaining representative at the mine. The ALJ disagreed, finding that Kerr-McGee had violated 30 C.F.R. Sec. 40.4 by refusing to post the designation-of-miners form. Kerr-McGee Coal Corp. v. Secretary of Labor, Mine Safety and Health Review Admin., 13 F.M.S.H.R.C. 1889 (1990). The ALJ ruled that, consistent with Utah Power & Light Co. v. Secretary of Labor, 897 F.2d 447 (10th Cir.1990), absent a showing of abuse, the Act and regulations place no restrictions on who may act as a miners' representative. 13 F.M.S.H.R.C. at 1903-05. As a result, the fact that the UMWA was not a collective bargaining agent of the Jacobs Ranch miners did not prevent it from acting as a miners' representative for purposes of the Act. Further, the ALJ rejected Kerr-McGee's argument that, given the UMWA's intent to unionize the mine, its use of the miners' representative designation constitutes per se abuse of the rights and privileges accorded safety representatives under the Act. The ALJ suggested that an abuse of the Act would occur if, after entering mine property in its role as a miners' representative, the UMWA "infiltrat[ed] working areas to enlist members, distribute literature, purloin confidential ... records, etc." Id. at 1905. Absent proof of such individual instances of abuse, however, the UMWA could act as a miners' representative. The Commission affirmed the ALJ's decision in all respects. Kerr-McGee Coal Corp. v. Secretary of Labor, Mine Safety and Health Admin., 15 F.M.S.H.R.C. 352 (1993).
 
 II.
 
 11
 Kerr-McGee contends that the Commission acted arbitrarily and unreasonably in adopting the Secretary's position that the Act and regulations allow non-elected labor unions to act as miners' representatives. The UMWA cannot qualify as a miners' representative at the Jacobs Ranch Mine, Kerr-McGee maintains, because the Act and its legislative history contemplate direct involvement by miners, not unions, and the UMWA would use its designation to further its organizational goals rather than the safety objectives embodied in the Act. In addition, Kerr-McGee maintains, the Secretary's interpretation creates unnecessary conflicts between the Act and Kerr-McGee's basic property rights to keep union organizers off of its property and out of its records. Hence, Kerr-McGee argues that even if the Act and regulations would otherwise allow the UMWA designation, the Supreme Court's opinion in Lechmere, Inc. v. NLRB, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), required the Secretary to balance Kerr-McGee's property interests against the safety objectives of the Act; such balancing, Kerr-McGee concludes, would compel a prohibition against non-elected third parties serving as miners' representatives for purposes of the Act.
 
 
 12
 In reviewing the Commission's determination that the Secretary reasonably interpreted the Act and regulations as allowing third parties to act as miners' representatives, the court applies the deferential standard of review set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Since the Act does not expressly address whether a non-elected labor organization can serve as a miners' representative at a non-unionized mine, the only issue is whether the Secretary and Commission adopted "a permissible construction of the statute." Id. at 843, 104 S.Ct. at 2782. This issue involves an interpretation not only of the statute itself, but of the regulations promulgated by the Secretary and hence the Secretary's interpretation deserves even greater deference and "will be accepted unless plainly wrong." General Carbon Co. v. Occupational Safety and Health Review Comm'n, 860 F.2d 479, 483 (D.C.Cir.1988); see also Secretary of Labor v. Western Fuels-Utah, Inc., 900 F.2d 318, 321 (D.C.Cir.1990). The Commission's construction, in turn, will stand so long as it is " 'reasonably defensible.' " Simpson v. FMSHRC, 842 F.2d 453, 458 (D.C.Cir.1988) (quoting Chevron, 467 U.S. at 843, 104 S.Ct. at 2781). "The respect due to [the Commission] is heightened" where, as here, the Secretary agrees with the Commission's determination. Emerald Mines Co. v. Federal Mine Safety and Health Review Comm'n, 863 F.2d 51, 53 (D.C.Cir.1988).
 
 A.
 
 13
 The Secretary has defined "representative of miners" to include "[a]ny person or organization which represents two or more miners at a coal or other mine for purposes of the Act...." 30 C.F.R. Sec. 40.1. The definition, by specifically including "organizations," appears to contemplate that labor unions may serve as miners' representatives. As the Secretary points out, the Preamble to the Part 40 regulations expressly considers and rejects the notion that miners' representatives must be selected by a majority of miners. 43 Fed.Reg. 29508 (July 7, 1978). As a result, an "organization" that represents less than 50% of the miners may act as a miners' representative under the Secretary's regulations. The Secretary's interpretation, then, does not appear inconsistent with the regulations or plainly wrong. General Carbon Co., 860 F.2d at 483.
 
 
 14
 However, Kerr-McGee contends that the Act contemplates participation by Jacobs Ranch Mine employees, not outside representatives, and that allowing the UMWA designation would undermine the safety objectives of the Act. Although conceding that unions that have collective bargaining responsibility under the NLRA may act as miners' representatives,[9] Kerr-McGee would bar all other third parties from filling the miners' representative role. Yet nothing in the Act or its legislative history lends support to Kerr-McGee's challenge to the Secretary's interpretation of the Act.
 
 
 15
 Although the Act refers to miners' representatives in a number of contexts, the only relevant discussion of the term appears in Sec. 103(f), which provides:
 
 
 16
 Participation of representatives of operators and miners in inspections
 
 
 17
 Subject to regulations issued by the Secretary, ... a representative authorized by his miners shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any coal or other mine.... Such representative of miners who is also an employee of the operator shall suffer no loss of pay during the period of his participation in the inspection made under this subsection. [The Secretary may also admit] additional representatives. However, only one such representative of miners who is an employee of the operator shall be entitled to suffer no loss of pay during the period of such participation under the provisions of this subsection.
 
 
 18
 30 U.S.C. Sec. 813(f) (emphasis added). This provision does not expressly bar non-employees from serving as miners' representatives; indeed, it appears to contemplate that miners may designate third parties to represent them for purposes of the Act. As the Tenth Circuit reasoned in Utah Power & Light, "[b]y creating a subclass of representatives who are entitled to compensation while exercising walkaround rights under Sec. 103(f), Congress clearly recognized that some miners' representatives may be employees of the operator and some may not." 897 F.2d at 450. Although Utah Power & Light, unlike the instant case, involved a unionized mine, the Tenth Circuit concluded that Sec. 103(f) "confers upon the miners the right to authorize a representative for walkaround purposes without any limitation on the employment status of the representative." Id. Its conclusion is consistent with the view of this court in Council of Southern Mountains v. Federal Mine Safety and Health Review Comm'n, 751 F.2d 1418, 1421 (D.C.Cir.1985), that the Act "merely refers to 'representatives' and does not articulate any distinction between the rights of employee and nonemployee representatives." Given the language of Sec. 103(f), and in the absence of a statutory definition or other limitation on the meaning of "miners' representative," the conclusion that the Act does not preclude non-elected unions from acting as miners' representatives is reasonable.
 
 
 19
 Kerr-McGee's contrary construction fares no better upon review of the legislative history of the Act. The legislative history shows that Congress considered miner education and participation important goals of the Act, but it does not suggest that Congress viewed third-party participation in mine safety issues as incompatible with those objectives. For example, although one colloquy between two Senators mentioned only miners (and not third parties) in the context of walkaround rights, the debate focused on whether mine employees who participated in safety inspections should receive compensation and not on the general question of whether non-employees could act as miners' representatives. See 123 CONG.REC. S20,019-20 (1977); Utah Power & Light, 897 F.2d at 451. The legislative history of the 1969 Act, the predecessor to the 1977 Act, further confirms that Congress did not intend to bar non-elected organizations from acting as miners' representatives.[10]
 
 
 20
 Obviously, if Congress had intended to restrict the meaning of "miners' representatives" in the 1977 Act, it could have done so in the statute or at least mentioned its views in the legislative history. It did neither. Consequently, in view of Congress' clear concern about miners' safety, the Secretary's broad interpretation of the term is consistent with congressional objectives.[11] As the Secretary points out, and as the Tenth Circuit observed in Utah Power & Light, third-party representatives can often contribute to an inspection in ways that miners themselves cannot. Non-employees may, for example, provide valuable safety and health expertise, use their knowledge of other mines to spot problems and suggest solutions, and take actions without the threat of pressure from the employer. 897 F.2d at 451-52. The involvement of third parties in mine safety issues therefore is consistent with Congress's legislative objectives of improving miner health and mine safety. While Kerr-McGee's argument that the Secretary's categorical reading of the statute and regulations could lead to anomalous results wholly apart from conflict with the NLRA--whereby a competitor or customer is designated a "miners' representative"--has intuitive appeal, we do not read the Commission's decision to imply that it would necessarily treat such "horribles" the same way as the "miners' representatives" who are challenged in this appeal.
 
 B.
 
 21
 Kerr-McGee relies on Utah Power & Light, which recognizes that in some circumstances "walkaround rights may be abused by nonemployee representatives," 897 F.2d at 452, to argue that the UMWA's use of the miners' representative designation for organizing purposes constitutes per se abuse under the Act. The Commission could reasonably reject this view. As proposed by Kerr-McGee, a third party's motive would determine whether it could serve as a miners' representative, and presumably, if any objective other than miner safety inspired the decision to seek miners' representative status, the third party would be disqualified from representing the miners. But, as the Tenth Circuit pointed out in rejecting any such automatic presumption of abuse, "the potential for abuse does not require a construction of the Act that would exclude nonemployee representatives from exercising walkaround rights altogether. The solution is for the operator to take action against individual instances of abuse when it discovers them." Id. The ALJ in the instant case made clear that the UMWA could abuse its rights by "either 'outside' or fifth-column type infiltration of working areas to enlist members, distribute literature, purloin confidential [Jacobs Ranch Mine] records, etc., under the facade of Mine Act participation." 13 F.M.S.H.R.C. at 1905. If the Secretary found evidence that a union had actually misused the authority granted by the Act, the union would lose its right to serve as a miners' representative.[12]
 
 
 22
 In light of the Act's objectives--to improve safety and health in the mines and to increase miner awareness of safety and health issues--this interpretation appears reasonable. The motivations of a miners' representative are irrelevant so long as the representative, through its actions, does not abuse its designation and serves the objectives of the Act. Indeed, the instant case illustrates that third parties can further the Act's goals of miner education and safety awareness.[13] The fact that the UMWA may seek to gain legitimacy and credibility among the Jacobs Ranch miners by educating and assisting them with health and safety issues does not suggest a reason to prevent its participation in the first instance.[14] Since Kerr-McGee has offered no evidence that the UMWA's designation contravenes the safety goals of the Act, the Commission could reasonably reject the position that a union's organizational motives constitute an abuse of the miners' representative designation.
 
 C.
 
 23
 Finally, Kerr-McGee's reliance on Lechmere, Inc. v. NLRB, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), as requiring the Secretary to balance Kerr-McGee's property interests against the safety interests of the Act in deciding whether the UMWA could serve as the miners' representative, is misplaced. In Lechmere, the Supreme Court held that Sec. 7 of the NLRA does not give nonemployee organizers the right to enter an employer's property for organizational purposes except when access to employees outside the employer's property is "infeasible." 502 U.S. at 537, 112 S.Ct. at 848. For several reasons, Lechmere did not require the Commission to balance the union and property interests here.
 
 
 24
 First, Lechmere concerned the NLRA, under which the union's right to contact employees is derivative of the employees' own organizational rights. The Court considered it important that the NLRA "confers rights only on employees, not on unions or their nonemployee organizers." Id. at 532, 112 S.Ct. at 845.[15] As a result, the Court refused to impede the employer's property rights unless absolutely necessary to ensure protection of the employees' organizational interests. Thus, the Court held that the "exception" to the employer's right to exclude unions from its property "was crafted precisely to protect the Sec. 7 rights of those employees who, by virtue of their employment, are isolated from the ordinary flow of information that characterizes our society." Id. at 539, 112 S.Ct. at 849.
 
 
 25
 By contrast, the Act defines the rights of miners' representatives and specifies the level of intrusion on private property interests necessary to advance the safety objectives of the Act. The miners' representative designation "does not convey an uncontrolled access right to the mine property to engage in any activity that the miners' representative wants." Thunder Basin Coal Co. v. Reich, --- U.S. ----, ----, 114 S.Ct. 771, 781, 127 L.Ed.2d 29 (1994). Instead, the Act specifies particular areas, all related to miner safety and health, in which Congress has deemed the participation of miners' representatives appropriate. Because Congress, rather than the agency, has conducted the balancing, the Lechmere standard is inapplicable.
 
 
 26
 Second, in Lechmere, the agency's discretion was limited by a prior Supreme Court decision that had interpreted the statute at issue. 502 U.S. at 536-537, 112 S.Ct. at 847-48; see also id. at 545, 112 S.Ct. at 852 (White, J., dissenting). The Supreme Court has not addressed the issue of whether third parties may serve as miners' representatives under the Act,[16] and therefore it has not precluded the interpretation adopted by the Secretary. In the absence of contrary Supreme Court precedent, the court must accept the Secretary's interpretation so long as it is "permissible." Chevron, 467 U.S. at 842, 104 S.Ct. at 2781.
 
 
 27
 Finally, Kerr-McGee attempts to recharacterize the property interests at issue in Lechmere as statutory NLRA objectives that the Commission must accommodate in implementing the Act. But, as the Supreme Court pointed out in Thunder Basin, "[t]he right of employers to exclude union organizers from their private property emanates from state common law, and while this right is not superseded by the NLRA, nothing in the NLRA expressly protects it." --- U.S. at ---- n. 21, 114 S.Ct. at 781 n. 21. By allowing non-elected unions to serve as miners' representatives, the Secretary has not disregarded any "other and equally important Congressional objectives" under the NLRA. See Southern S.S. Co. v. NLRB, 316 U.S. 31, 47-49, 62 S.Ct. 886, 894-896, 86 L.Ed. 1246 (1942). NLRA policies therefore do not weigh against the Secretary's construction.
 
 Accordingly, we deny the petition.[17]
 SENTELLE, Circuit Judge, concurring:
 
 28
 I agree with the majority's analysis and conclusion. I write separately only to emphasize what I understand the court not to be deciding. That is, I understand the court to be deciding only that the Secretary has permissibly interpreted the Federal Mine Safety and Health Amendments Act of 1977, 30 U.S.C. Sec. 801 et seq. (1988), to permit the selection by two or more miners of private persons not employed by the mine as representatives for the purpose of "accompany[ing] the Secretary or his authorized representative during the physical inspection" of the mine and participating in related conferences. 30 U.S.C. Sec. 813(f). The court does not decide whether the statute as construed is constitutional.
 
 
 29
 I agree with my colleagues that we need not decide the constitutional question. "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 445, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988) (citations omitted). Nonetheless, I wish to highlight the fact that we are not determining constitutionality because I believe there is a question of constitutional dimension lurking behind today's decision--a question based on the same constitutional presumptions that I believe underlie Lechmere, Inc. v. NLRB, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992). That is, it is fundamental to our constitutional system of limited government that no person can "be deprived of ... property, without due process of law...." U.S. Const. amend. V. Whatever else is encompassed within the right of "property" protected by the Fifth Amendment, the right to exclude unwarranted intrusions is fundamental. See, e.g., Lloyd Corp. v. Tanner, 407 U.S. 551, 567, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972).
 
 
 30
 To say that the Congress can constitutionally pass laws permitting inspections of mine premises is one thing; to say that it can compel mine owners to permit onto their premises private individuals whose only claim to presence is selection by two of the property owners' employees is quite another. I dare say that the very attorneys representing the plaintiffs in this case would think their constitutional rights ill used if a legislative body were to require them to permit into their offices, file rooms, and conference areas anyone whom two of their secretaries, messengers, or paralegals chose to invite. Likewise, the miners themselves would probably not be happy with a statute providing that any two private persons who lawfully entered their homes could thereafter lawfully invite anyone else they chose to make the same intrusion.
 
 
 31
 It may well be that the statute in its present form and with its present interpretation is constitutional; but it may not. The parties have not raised that question. I hope that future litigants will not cite this case for the proposition that the statute is constitutional if in some later case that issue is presented.
 
 
 
 [1]
 Pub.L. No. 95-164, 91 Stat. 1290 (1977) (codified at 30 U.S.C. Secs. 801 et seq. (1988))
 
 
 [2]
 H.R. CONF.REP. No. 655, 95th Cong., 1st Sess. 1 (1977), U.S.Code Cong. & Admin.News 1977, pp. 3401, 3485. The Act amends and modifies the Federal Coal Mine Health and Safety Act of 1969, Pub.L. No. 91-173, 83 Stat. 742, by combining its miner protection provisions with those of the Nonmetallic Mine Safety Act of 1966, Pub.L. No. 89-577, 80 Stat. 772 (formerly codified at 30 U.S.C. Secs. 721-740), repealed by Sec. 306(a) of the Act, supra note 1, 91 Stat. at 1322. See Council of Southern Mountains, Inc. v. Federal Mine Safety & Health Review Comm'n, 751 F.2d 1418, 1419 (D.C.Cir.1985)
 
 
 [3]
 The Act also charges the Federal Mine Safety and Health Review Commission, an independent entity, with adjudicating disputes arising under the Act. See Secs. 101 & 113; 30 U.S.C. Sec. 811
 
 
 [4]
 See 123 CONG.REC. S20,019 (1977) (comments of Senator Javits)
 
 
 [5]
 A miners' representative may, for example, request and obtain an "immediate inspection" by the Secretary when the representative "has reasonable grounds to believe that a violation of [the Act] or a mandatory health or safety standard exists, or an imminent danger exists...." 30 U.S.C. Sec. 813(g)(1). Miners' representatives may also have access to confidential safety-related documents (such as the roof control plan and mine map) and may take part in hearings, appeals, and disciplinary proceedings involving the mine. See, e.g., id. Secs. 811(c), 813(g)(2), 815(d), 821, 862(a), 872(b)
 
 
 [6]
 All miners' representatives must file with MSHA identifying information (such as the representative's name and address) as well as a document which "evidences the designation of the representative of miners." 30 C.F.R. Sec. 40.3
 
 
 [7]
 30 C.F.R. Sec. 40.4 provides: "A copy of the information provided the operator pursuant to 40.3 of this part shall be posted upon receipt by the operator on the mine bulletin board and maintained in a current status."
 
 
 [8]
 "If, upon inspection or investigation, the Secretary or his authorized representative believes that an operator ... has violated this chapter, or any ... regulation promulgated pursuant to this chapter, he shall, with reasonable promptness, issue a citation to the operator." Id
 
 
 [9]
 Amici contest even this proposition, arguing that third parties cannot, under any circumstances, act as miners' representatives under the Act. "[A]t most," amici argue, Sec. 103(f) grants a right to non-employee miners' representatives who are otherwise rightfully on the mine to accompany the inspector during the physical inspection of the mine
 
 
 [10]
 The Conference Report accompanying the 1969 Act stated that "as used ... throughout the Act, the term 'representative of the miners' includes any individual or organization that represents any group of miners at a given mine and does not require that the representative be a recognized representative under other labor laws." H.R. CONF.REP. No. 761, 91st Cong., 1st Sess. 67 (1969), U.S.Code Cong. & Admin.News 1969, pp. 2503, 2583. Although the 1969 Act defined the role of miners' representatives somewhat differently than the 1977 Act, it provided for walkaround rights, the right to call for inspections, and other privileges available under the current law. See, e.g., 1969 Act section 103(h), 83 Stat. 742, 750 (1969)
 
 
 [11]
 Although Kerr-McGee does not emphasize the point, we note it is the regulations that allow for "[a]ny person or organization " to serve as a miners' representative. The statute, 30 U.S.C. Sec. 813(f), refers only to "representatives" of miners generally
 
 
 [12]
 Although the Secretary's regulations do not specify a procedure for disqualifying a miners' representative for abusive behavior, the mine operator could obtain relief by following the course taken in this case: refusing to post the representative's designation and denying access to the mine. The Secretary, exercising prosecutorial discretion, could then decide whether the union had abused its authority and relinquished the right to serve as miners' representative
 
 
 [13]
 Before the UMWA designation, the miners at Jacobs Ranch Mine had never selected a miners' representative. The record shows that the UMWA has offered educational sessions to discuss safety issues and inform miners of their health and safety rights. Other non-employee, non-elected groups have offered similar services to improve mine safety and miner health. See Council of Southern Mountains, 751 F.2d at 1421 (miners' representative was "a grass-roots citizen's organization which, since 1913, has worked to improve health and safety conditions in the Appalachian coal mines")
 
 
 [14]
 The ALJ found that Kerr-McGee "at best showed [that the] UMWA used [the] Part 40 [regulations] as a 'tool' to create employee interest and to enhance its standing." 13 F.M.S.H.R.C. at 1907
 
 
 [15]
 See also National Labor Relations Bd. v. Babcock & Wilcox Co., 351 U.S. 105, 113, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956) (although "[n]o restriction may be placed on the employees' right to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to maintain production or discipline, ... no such obligation is owed nonemployee organizers")
 
 
 [16]
 Indeed, in Thunder Basin, involving the regulations at issue here, the Supreme Court noted in dictum that "Congress' interest in regulating the mining industry may justify limiting the private property interests of mine operators." --- U.S. at ---- n. 21, 114 S.Ct. at 781 n. 21
 
 
 [17]
 Kerr-McGee's contention that the Commission erred in concluding that the ALJ did not abuse his discretion in denying the motion to reopen the record based on newly discovered evidence is without merit. Kerr-McGee concedes that a motion to reopen is justified only when the new evidence would affect the outcome of the case. See Friends of the River v. FERC, 720 F.2d 93, 98 n. 6 (D.C.Cir.1983). The ALJ could reasonably conclude that consideration of Kerr-McGee's new evidence would not change the result in the instant case. The new documents establish, at most, that the UMWA plans to use its miners' representative status to gain credibility among miners in the Powder River Basin and thus further its organizational goals. The documents show no intent by the UMWA to conduct organizing activities on mine property or to misuse the information to which it is entitled under the Act